Good morning judges of the panel. My name is Charles Kennebec. I represent Mr. Hoch. I'd like to reserve three minutes for rebuttals. There are three issues before the court and I'm going to start with the easiest one and that is the Common Fund argument. In the complaint, MBI sought repayment of the entire $68,310 lien without any reduction for attorney's fees or cost. In that regard, at paragraph 16 of the complaint, MBI brought in action and it said we request reimbursement in the amount of $68,210.38. MBI repeated that demand for $68,210.38 in the prayer for relief. The Common Fund doctrine fairly reduces a lien or his claim because the the person has to pay attorney's fees and cost to make the recovery. And the Common Fund doctrine simply says as a matter of fairness, if somebody's going to get money from a recovery from a fund, the person who created that fund will have this the cost shared for the benefit of the person is taking from the fund. Here it's unquestioned that the the MBI was not entitled to a full reimbursement and they had to reduce it by the attorney's fees and cost that Mr. Hoch incurred. This holding comes all the way from the Supreme Court in the matter of McCutcheon versus U.S. Airways and essentially the Common Fund doctrine is read into the document. According to McCutcheon, if a governing document does not specifically write out the application of the Common Fund doctrine, then the Common Fund doctrine will be read into the into the document. In this case, it's clear that the document did not obviate the Common Fund doctrine. As a result, MBI was required to reduce its lien demand from $68,000 to approximately $45,000, but they did not do that. They demanded twice in their complaint the entire $68,000. Counsel, to the extent that your counterclaim seeks more than the benefits due under the plan or injunctive relief, is it authorized by ERISA? We're not seeking more than what we're looking for is recompense for the loss of interest of time that Hoch incurred. We also sought to Isn't that beyond the benefits that are due under the plan? No, because they breached the plan by demanding more than they were entitled to under the plan. Under ERISA 1132, you're entitled to have a reimbursement or recovery of benefits due. They demanded more than they were entitled to. They breached the They did. They ultimately conceded that. Why is that a hot issue here? Well, because the whole case was dismissed, including the portion of our counterclaim that dealt with the Common Fund doctrine. So that's why it's still here, because the judge did not say, I disagree with you on the plan, I disagree with you on the service agreement. The judge said, I'm throwing the entire case out, including the Common Fund claim. And that's why we're here, sir. And as a result of that, the money that Hoch was entitled to, that is approximately $22,000, had to remain in escrow. During that time, he lost the use of it. During the time, he lost interest on it. During the time he had that, he couldn't invest it, pay off bills of his life, raise his daughter. And as a result, those losses occurred. Now but that doesn't mean that for the time the money was held in escrow from Mr. Hoch, for the time that they conceded it and we were able to release it, that he had losses in that time period. And that's what that portion is about, sir. And to Judge Grouse, under ERISA, a beneficiary is entitled to clarify his rights to future benefits. He's still employed and he wants to clarify that he has a future. He is also entitled to enjoin MBI's future demands of reimbursement. That's under 1132 A3, the ability to enjoin. The ability to clarify the rights comes from ERISA 1132 A1B. That's the ability to clarify. And he seeks to redress MBI's past violations through the equitable remedies permitted by ERISA, which is 1132 A1B, and that is the opportunity to enforce them. Now, MBI said, well, what were his losses? He didn't have any losses because we ultimately let the money go. They ultimately did when they realized that it was wrong. But Hoch did have those loss of income, loss of use of money that I talked about. However, even if there is no loss of actual money, ERISA still grants standing to a beneficiary. And the reason for that is because, for example, citing the Ninth Circuit, the Third Circuit, the Second Circuit, Congress intended to make fiduciaries culpable for certain ERISA violations, even the absence of an actual injury to the participant. And, for example, enjoining something in the future. The person hasn't actually lost something at the moment, but you have standing to enjoin something that would be improper in the future. So under ERISA, it's not only actual losses, but it's actually the ability to enforce things, to enjoin things, to declare things, to have determinations made that also applied. Now, the second item is the more interesting one, and that is that the the summary plan description here, which I'll refer to SPD, is not also the plan document. Counsel, what do you do with all the other circuits? I think I count five of them that said it can be. And, Your Honor, it can be. And I'm going to highlight something. This claim, our position, is that the SPD here is not also simultaneously the plan. And here's what distinguishes it. Our position is not that the SPD can never be the plan, but when you have only one document, and there's only one, you can't simultaneously be a summary and a plan at the same time. Those other cases, Your Honor, are incredibly different in that there is actually a plan document that incorporates the SPD. For example, they Now, hold on. You said a magic word to me. You said the plan document incorporated the SPD? Yes. Well, what about here, when I look at the Administrative Services Agreement, the first whereas says, various benefits as set forth in the attached Exhibit A, which is a summary plan document. It's incorporated here. However, Your Honor, that would be a perfect interpretation, except that the Court then said the Service Agreement is not the plan. Because the Service Agreement says exactly what you said. Our position is, actually our third position, is that the Service Agreement is the plan. But the Court said, no, it's not. And here's the thing. The Service Agreement does not it's blank, it's void. As a result, MBI could not say that the Service Agreement was the plan. Because if MBI says the service... So is it really blank and void if it incorporates the SPD, which does provide for subrogation? No, it's not. Because remember, the plan document is the one that has to contain the subrogation. This is exactly what went on in McCutcheon and Cigna. The plan document is the one that has to control. That's the one that says it. For example, in Cigna and McCutcheon, the plan document did not have reimbursement. The SPD did. And in both of those cases, U.S. Supreme Court cases Cigna and McCutcheon, the Court said you look to the plan, not to the SPD. So this is a mirror image where if the Service Agreement is the plan, and it does not provide for subrogation, and the subrogation cannot be found only in the SPD. And that comes exactly from Cigna and McCutcheon. Okay, by our Gamboa case, I know Gamboa is before Cigna and Amar. I get that. But by our Gamboa case, you look at where the source of the benefits is. Because we have that magic where no source of benefits exists. You've seen the language. And the if benefits. So do we look to where the benefits are to what the real formal plan document. Is that what all the circuits are trying to say? The answer is absolutely no. Okay. And the reason Gamboa... Wait, wait. Before you say absolutely no, you know the quoted sentence. Quote, where no other source of benefits exists, the summary plan document is the formal plan document regardless of its label. That's what this Court said and the law governing this. Okay. Subject to, subject to you showing us the course that Amar changes that. Okay. Okay, so that's the language why I'm gonna question your absolutely no. There are three reasons, Your Honor. You may explain. It's an excellent question and it deserves an equally good answer. First, Gamboa was decided four years before, before Cigna. But second, a factual one which is uncontested. No matter what you read about Cigna and McCutcheon, Gamboa involved a wrapped document. That is, there was a plan. There was document and the SPD and the word was it incorporated them. Okay. That is not here. There is no wrapped document here. So, in short, what we have and, and further as, as Your Honor picked up, Gamboa relied on the language that said if there's no other document. However, the reason why the District Court did that was because the court had a sense of fairness and said if we can't get benefits for our people, for the employers, for the employees from the SPD, they're not getting them anywhere. And the answer is that's incorrect. Having done ERISA cases now a long time, an employee is entitled to the benefits listed in the SPD, not by enforcing the SPD because the SPD has become the plan, but because of fiduciary duty. There's a plan under 409 or 1109 of ERISA by which the employees are entitled to their benefits that they're promised. The SPD is a promise. That doesn't mean it's the plan document, but what it means is that even if the SPD is not the plan, which it's not, the employers are not. Can you cite a case that says that the SPD alone would be insufficient? I would say that Cigna versus Aetna and McCutcheon say that the SPD, absolutely, the terms in the SPD are not the terms of the plan and are insufficient. But that's only if there is also a separate plan document, right? No, no. One of the the mistakes that... Where else in the absence of a separate plan document, where else would you divine the duties of the employer to pay the benefits? The duties to pay the benefits derive from a plan. However, in this case, we said that the plan could be the service agreement. MBA said no because there's no segregation in it and they lose. The court said we're not going to use the the service agreement as the ERISA plan to incorporate the SPD. But the service agreement itself doesn't lay out the duties of the employer to pay benefits, right? That's exactly right. So that seems to me that that's not a very... in and of itself is not a plan document that defines the rights between the employer and the employee. Right. The plan documents, plan documents frequently will incorporate other things and most of the time it's an insurance policy. Usually an ERISA plan will say this is an official plan and we incorporate the health insurance. We incorporate the accidental death and disability. And those documents will will contain the benefits that the employees get. But what happens is when it comes time to the subrogation aspect, the repayment, the plan itself is the controlling document. And this is what we went through in McCutcheon and Cigna, where literally the plan document was silent on repayment. The SPD said there is repayment. And in both instances, even when McCutcheon came back to the district court where I am in Pennsylvania, that came out of the Western District where I am, the judge then said all right we now have a plan document, we have an SPD, we got to see what the story is. And the court ultimately concluded that the plan Mr. Kennebecker, I note you're about to run out of time. Would you like to reserve some? I've reserved, yes sir, thank you. Very well, thank you. Good morning Mr. Howard. Good morning, Your Honor. May it please the court, my name is Gordon Howard and I represent Plano-Fapelli NBI Energy Services Inc. And NBI requests that this court affirm the district court's holding that under the facts presented, the document titled Summary Plan Description is in fact an enforceable ERISA plan document. If this court so holds, it will simply be affirming long-standing eight-circuit precedent as stated in Gamboa and also aligning itself with every other circuit court to consider this issue since tomorrow. I'm confused about the 45,000 bucks. I thought you all had agreed in that and it wasn't even in the case, you know, it's kind of moot. What's the truth? Well, the fact of the matter is the plan paid $68,000 in benefits on behalf of Mr. Hawk. We could not communicate with Mr. Hawk pre-suit to determine, you know, what the status of funds were. We filed a complaint. We learned that only $43,000 were held in trust by Mr. Hawk's attorney. We immediately released the $20,000 and then asked the court to enjoin for the duration of the lawsuit only the $45,000. And then we subsequently filed a motion to dismiss, affirmatively advising the district court that we were only pursuing $45,000 and had relinquished our claim to the additional $23,000. Subsequent to that, Mr. Hawk filed a counterclaim. And so it's our position that... Wait, but the court says you got the $45,000, right? The court awarded us the $45,000. That's correct. Right. Have you got it yet or not? No, Your Honor. It's still being held in the registry of the district court. Okay. Proceed. So basically thus far, the 5th, 6th, 9th, and 11th circuits have all that a plan can enforce a reimbursement provision found only in an SPD where there is no other benefit-defining document. As in Gamboa, this course is once again faced with a situation where a RISA plan participant received benefits found only in the terms and conditions of an SPD. Yet after receiving the benefits, the plan participant then seeks to disavow the very document upon which it received benefits. Counsel, let me ask this. To the extent there is a ambiguity or question here about what document is the plan document and whether that document has a reimbursement provision in it, who created that ambiguity? Who's responsible for that? The ambiguity would be created by the plan sponsor and the claims administrator. Right. So why should they not... Why should it not be construed against the person that created that ambiguity here rather than the plan participant? Well, I would say, Your Honor, there is no true ambiguity because the... It seems to me there's a big disagreement here about what's the plan document and what's the SPD and whether they're all one. That's the whole issue here. Well, the SPD states that the plan is comprised of two documents, an administrative services contract and an SPD. The administrative services contract is simply a contract between the claims administrator, Blue Cross Blue Shield of North Dakota, and the plan. And what the administrative services contract is, is to allocate the responsibility between the plan and the claims administrator and gives the claims administrator permission to perform certain tasks on behalf of the plan. And these include administering benefits and paying benefits on behalf of the plan. It's important to note that the administrative services contract states in its recitals first that the administrator is to admit that the plan offers benefits in accordance with an Exhibit A. The Exhibit A to the administrative services contract is the SPD which we seek to enforce. But doesn't ERISA require both a plan and an SPD? Every court to consider this issue has said no. Well, aren't we supposed to look at the text of the statute? I've got it. I've got to step on his question for one second. Yes, Your Honor. Supreme Court says there has to be two, right? Well, what the Supreme Court states... That's what they carefully tell you. And Amar are quoting the different statutes that there has to be two of them, right? Well, I believe that that... It's the only fair reading of the case. ...the concurrence of Justice Scalia, so it's not binding law. Now, but I would also submit that every court to consider this issue, that being the Fifth, that being the Ninth, that being the Sixth, that being the Eleventh, the Tenth, and even the First, have all said that the SPD can serve as both the governing plan document and a summary description of said document. Counsel, what if I care more what the statute says than what other circuits say? Well, then I think that that you're going to create a circuit split and it's going to affect the viability of ERISA plans throughout the country. And I also believe that it's a form-over-substance situation in that the Supreme Court and MGM Polymers noted that one of the core goals of ERISA is to create a system that is... They give, unlike pension plans, which are highly regulated, employee welfare benefit plans are given large leeway to design those plans as they see fit. Doesn't that approach allow the plan administrator to give itself rights under the SPD and isn't that prohibited? Well, Your Honor, if there is no... If there is no... I suppose that it potentially could. However, in this case, there is no rights found in the ASC. So if the court determines that the SPD is not, in fact, the benefit-defining document, it will, in essence, say that there is no plan. And no plan means there's no benefits offered to any of the plan participants. And this is precisely the conundrum that was recognized by the Ninth Circuit, the Sixth Circuit, Fifth Circuit, and the Eleventh Circuit. And it goes back to this court holding in Gamboa. And, you know, that it would be nonsensical to read the nullity. And so it's our position that, and again, there is a plethora of federal authority for the proposition that an SPD can serve as both a written instrument and SPD. And to my knowledge, there is no authority to the contrary post Amara. And this is, as I said, in keeping with the purpose of ERISA. And we believe that there's only two rational conclusions here. And that is that the SPD is either A, the governing plan document, or B, it is incorporated by reference into the administrative services contract. Are we, is our court incorrect in Gamboa because they put where no other source of benefits exists? We make it sound like, just in this sentence, and I read it to your opponent, that you look where the benefits are. And then that defines, it helps you tell where the summary plan description, SPD, is the formal plan, regardless of its label. Correct, Your Honor. That's wrong though, right? No. Amara clearly says that that's not what you're supposed to do. You don't look at where the benefits are, right? Well, no. Amara is only applicable where there is truly a conflict between a governing plan document and a summary plan description. If there is only one document, then those documents cannot be, then there is no conflict. And this court's also noted post-Amara in cases, I believe it was Johnson v. United of Omaha, and also Shaw versus Prudential. And in Johnson v. United of Omaha, the SPD, there is an SPD and an insurance policy. And in that, in that case, the insurance, the SPD was Counsel, that's a reasonable expectations case, isn't it? A basis. I believe you're so, Your Honor. Is that in ERISA at all, a reasonable expectations approach? I believe that was. Okay, tell me where it is in ERISA. Well, it is not specifically in ERISA. However, one, I believe that it's, that the, the interpretation is applicable in that, in that if a plan participant were to receive the documents here, they were to go through the Administrative Services Contract, they would not expect to find any benefit-defining language in that document. They wouldn't expect to get the SPD and see, which is identified as Exhibit A, to look to the benefits that they're going to receive. I know a lot of insurance law has reasonable expectations, but I don't think that's part of ERISA. Now, I realize this court has that sentence that you're referring to, about what the participant would reasonably expect. Do you think that's just a rationalization? Well, I think that it's, I think that it's, it's a statement of, of the, the fact that we have to have a document that defines the benefits. ERISA says that there has to be a written document that defines the benefits, and in here, there is only, there is but one, and that's the Summary Plan Description. And as, and I think that, you know, there can, this court can also look to the situation that was faced by the Ninth Circuit in Mull. In that case, you had a trust agreement along with a Summary Plan Description. In that case, there's a Summary Plan Description that stated that if there is a conflict, it deferred to the language of the trust agreement. And what the Ninth Circuit held was that, that the trust agreement did not provide any benefit terms, but that all those terms were found within the SPD. And the court refused to interpret the plan in such a way that would render it offering no benefits at all, which it would have to do if it enforced only the trust agreement. And so what the court there did was found that the trust agreement and SPD together comprised the terms of the plan, and that the Summary Plan Description provided the operative benefits language and enforced the language found within the SPD. Counsel, let me ask you just a little bit about the Parade of Horribles or worst-case scenario where, unless we side with MBI that, you know, the world's going to come to an end. Isn't the truth here that we would simply, simply be no reimbursement required of Mr. Hoke? Isn't that the result? Why would it go beyond that? Well, Your Honor, there would be no plan document for the employee to look to, to say, hey, I'm entitled to get, you know, my treatment for a strep throat, or I'm entitled to get these vaccinations because... Why would this court have to reach beyond the issue before us, which is whether Mr. Hoke is required to reimburse MBI? Because the SPD is the only document that says what benefits are provided. And if there is no plan document that says that, and this court so found, why would the holding go beyond the issue before us, which was whether Mr. Hoke has to reimburse MBI? Well, then the plan could very easily say that, under Eighth Circuit precedent, there is no document that says what benefits we have to provide, and we choose not to provide benefits in accordance with the SPD. We'll provide benefits only... Counselor, now, I think you're shifting ground a little bit, because your very first whereas says you're going to give the various benefits that are in Exhibit A. Correct. But if the plan has to be interpreted and benefits paid in accordance with the plan, that means that you can't just take the good. You have to take both the rights and the obligations. You think subrogation is part of benefits? Yes, Your Honor. It is clearly... The little word benefits includes subrogation? Yes, Your Honor. Well, you can get... There are lots of kinds of benefits that don't have subrogation. Well, benefits have come with certain rights and obligations, and part of that is that in ERISA, the benefits, particularly in a self-funded plan, there's a finite amount of benefits available. And it is a fiduciary obligation to preserve plan assets. And if the plan, in these situations, is not allowed to preserve plan assets and prevent what would, in essence, be a double-dip recovery by a plan participant, then it puts the financial viability of the plan at risk. And it also leads to other issues, because the plan has stop-loss coverage, which is paid due to actuarial assumptions. And one of the assumptions is that there's going to be reimbursement recoveries if you have high-dollar claims. And often, high-dollar claims come with reimbursement because it's the result of a personal injury accident. Why couldn't your attorneys simply draft a plan document in an SPD, as ERISA seems to require? Well, Your Honor, I believe that perhaps would be a perfect world. However, as noted, if this Court holds that way, it will be stepping out of line and creating a circuit split from every other circuit to consider this issue. And it will also be disavowing its holding in Gamboa. What's your best case that Johnson controls is here? Well, Your Honor, I believe there's actually a case that I think that it deals with conflict language, and it was actually one written by you. It was Jones v. Aetna, where you said that there is no conflict unless there is truly a conflict. And here we have no conflict because the ASC clearly incorporates the Exhibit A. Sincerely, do you want to address the Johnson case, 2014? It's after Amara. Are you familiar with it, Johnson? I'm fairly familiar with it, and I know that it's dealt with a slightly different issue in that there is an insurance policy, and it really dealt with a, who had, you know, the abuse of discretion standard. So I don't know that it is apples to apples. It does have the language about the plan integrating, I can't say it, integrating the SPD into the policy itself. It does have the reasonable participant language. And I think that the other case, I'm out of time, but since you asked, I believe that the Shaw v. Prudential case would also speak to this issue. That one dealt with a RAP document and SPD, and I believe it is probably closer on point to the issue that we're dealing with. And thank you, Your Honors. Thank you, Mr. Howard. Mr. Kennebecker, you have a small amount of time for rebuttal. I do, Your Honor. I'll be very quick. Counsel is incorrect, as indicated earlier. Employees are entitled to their benefits through fiduciary duty anyway. The plan is also insured, that way insurance will actually help pay some of the benefits. The issue before the Court, as Judge Grass said, is why can't we just follow the law? And you're exactly right. ERISA 1102 and ERISA 1002 both require one plan, one requires an SPD. They have their own requirements. There are regulations about each one that say what has to be in each one. It's very specific. If an SPD can become the plan, is the language then regarding an SPD just surplusage in the law? We're eviscerating it. It will have no effect. It will never apply to anything. How can one document be a detailed explanation of every benefit that an employee gets and a summary of those benefits at the same exact time? And Judge Grass, you're also correct that if the administrator can amend the SPD to include subrogation, what happens when it's an insurance company and not a self-insured plan? The insurance company, as the administrator, could just change the SPD, write and we get subrogation when the plan doesn't have it, and then they come out ahead of the game to the detriment of the employees. And lastly, if you have a plan and you have an SPD, and if there's a conflict, the SPD loses. But if you have a situation where there's no plan and there's an SPD, like we have here, how is it that they can come out ahead by failing to have a plan and not following the law, get a better advantage as a result than if they followed the law? The law should not countenance that the people who follow the law are disadvantaged to those who don't follow the law and actually create a plan. Thank you, Your Honors. Very well, thank you. Counsel, the Court appreciates your appearance today and your briefing. The case will be submitted and decided in due course. Thank you, sir.